# UNITED STATES DISTRICT COURT

**EASTERN DISTRICT OF WISCONSIN**

U.S DISTRICT COURT
EASTERN DISTRICT-WI
GREEN BAY DIV.

'09 AUG 19 P2:36

UNITED STATES OF AMERICA

V.

RICHARD A. DODGE II
(d.o.b. xx/xx/86)

CRIMINAL COMPLAINT

JON W. S...

CASE NUMBER: 09-M-637

I, Roberto Molina, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. **(Count One)** That on or about February 19, 2009, in the State and Eastern District of Wisconsin, Richard A. Dodge II did knowingly deliver marijuana, a Schedule I controlled substance in violation of Title 21, United States Code, Sections 841(a)(1), and 841(b)(1)(D). **(Count Two)** that on or about February 25, 2009, in the State and Eastern District of Wisconsin, Richard A. Dodge II did knowingly deliver marijuana, a Schedule I controlled substance in violation of Title 21, United States Code, Sections 841(a)(1), and 841(b)(1)(D). **(Count Three)** That on or about March 6, 2009, in the State and Eastern District of Wisconsin, Richard A. Dodge II did knowingly deliver marijuana, a Schedule I controlled substance in violation of Title 21, United States Code, Sections 841(a)(1), and 841(b)(1)(D). **(Count Four)** That on or about August 11, 2009, in the State and Eastern District of Wisconsin, Richard A. Dodge II did knowingly deliver marijuana, a Schedule I controlled substance in violation of Title 21, United States Code, Sections 841(a)(1), and 841(b)(1)(D).

I further state that I am a Special Agent with the Federal Bureau of Investigation, and this complaint is based on the following facts:

Please see the attached affidavit.

Continued on the attached sheet and made a part hereof:   X  Yes   ___ No

Signature of Complainant
**ROBERTO MOLINA**

Sworn to before me and subscribed in my presence,

August 19, 2009                at Green Bay, Wisconsin
Date                            City and State

The Honorable James R. Sickel
United States Magistrate Judge
Name & Title of Judicial Officer          Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT & ARREST WARRANT

Roberto Molina, being first duly sworn, states that:

## Background

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI). I have been an agent for approximately 19 years. As part of my duties, I investigate violations of federal drug trafficking laws, including delivery and possession with intent to deliver a controlled substance in violation of 21 U.S.C. §§ 841.

## Basis for Information in Affidavit

2. The information contained in this affidavit is based upon my personal knowledge and investigation, and information supplied to me by other law enforcement officers including the Menominee Tribal Police Department (MTP) all of whom I believe to be truthful and reliable. Based on my investigation and the information supplied to me by other law enforcement personnel, I have probable cause to believe the following regarding Richard Dodge.

## Facts Establishing Probable Cause

3. I have spoke with a confidential informant (CI#1) who stated that he/she is familiar with Richard A. Dodge II, d.o.b. 12/06/86 as CI#1 has purchased controlled substances from him in the past. I am aware that Richard A. Dodge II resides at N479 Chief Tomau Road, Keshena, Wisconsin, Menominee Indian Reservation, State and Eastern District of Wisconsin.

4. I am aware that on February 19, 2009, CI#1 purchased two dime bags of marijuana from Richard A. Dodge II. Prior to the buy, CI#1 was searched with negative results and outfitted with a body wire to record any drug related conversation with others. CI#1 was also provided with $20.00 in prerecorded U.S. currency. CI#1 left shortly thereafter, met with MTP, and turned over to them a substance later testing positive for the presence of marijuana. CI#1

then provided a statement to law enforcement detailing the drug buy from Dodge. CI#1 stated CI#1 met with Dodge and asked for "two" meaning two bags of marijuana. Dodge stated, "two of what, dimes?" CI#1 agreed at which time Dodge provided to CI#1 two dime bags of marijuana from a blue bowl sitting on the kitchen table that he said was "Hydro." CI#1 gave Dodge $20.00 in pre-recorded U.S. currency. CI#1 observed the strong odor of marijuana inside Dodge's house.

5. I am further aware on February 25, 2009, CI#1 purchased approximately 5.5 grams of marijuana from Dodge at the above described residence. Prior to making the purchase, law enforcement searched CI#1's person and vehicle for controlled substances, weapons, or U.S. currency. Officers did not locate any such items and then provided CI#1 with a device to record any conversations he/she may have. After providing CI#1 with an amount of pre-recorded buy money, surveillance officers followed CI#1 to the Dodge's residence at the above location and heard CI#1 ask a male for four bags. CI#1 left shortly thereafter and turned over to law enforcement a substance later testing positive for the presence of marijuana. CI#1 later provided a statement to MTP indicating that CI#1 went to the Dodge residence and met with Dodge in his living room. Dodge told CI#1 that he only had "dimes" meaning ten dollar amounts of marijuana. Dodge then reached down by an end table next to his couch and obtained four plastic baggies containing marijuana. Dodge handed CI#1 the four plastic bags of marijuana in exchange for $40.00 in pre-recorded U.S. currency. CI#1 then left the residence.

6. I am further aware on March 6, 2009, CI#1 purchased approximately 1/2 ounce of marijuana from Dodge at his residence as described above. Prior to making the purchase, law enforcement searched CI#1's person and vehicle for controlled substances, weapons, or U.S.

2

currency. Officers did not locate any such items and then provided CI#1 with a device to record any conversations he/she may have. After providing CI#1 with an amount of pre-recorded buy money, surveillance officers followed CI#1 to Dodge's residence at the above location. Surveillance officers heard CI#1, via the body wire, ask a male for four, dime bags. Shortly thereafter, surveillance officers saw CI#1 leave the premises at which time CI#1 turned over to law enforcement a single baggie containing a substance later testing positive for the presence of marijuana. CI#1 then told law enforcement that CI#1 met with Dodge at his residence and said CI#1 wanted four dime bags. CI#1 said that Dodge told CI#1 he would make it two 20's and put it in one bag. CI#1 saw Dodge retrieve the marijuana from underneath the couch in his living room. Dodge put the marijuana in a clear plastic baggie and provided it to CI#1 in exchange for $40 in buy money. CI#1 then left the residence.

7. I am further aware on August 11, 2009, CI#1 purchased approximately 1/2 ounce of marijuana from Dodge at his residence as described above. Prior to making the purchase, law enforcement searched CI#1's person and vehicle for controlled substances, weapons, or U.S. currency. Officers did not locate any such items and then provided CI#1 with a device to record any conversations he/she may have. After providing CI#1 with an amount of pre-recorded buy money, surveillance officers followed CI#1 to Dodge's residence at the above location. Surveillance officers heard CI#1, via the body wire, ask a male for a thirty bag. Shortly thereafter, surveillance officers saw CI#1 enter the premises and, some time after that, leave the premises. CI#1 then turned over to law enforcement a single baggie containing a substance later testing positive for the presence of marijuana. CI#1 then told law enforcement that CI#1 met with Dodge at his residence and told him that CI#1 wanted a thirty bag. CI#1 said that CI#1 and

Dodge entered the premises. Dodge went into the kitchen area and obtained a large plastic bag containing marijuana. Dodge took some of the marijuana from the bag and put it on a scale. Dodge then delivered the marijuana to CI#1 in exchange for $30 in buy money. CI#1 then left the residence.

8. Based upon the foregoing information, I believe there is probable cause to believe that Richard A. Dodge II delivered marijuana in violation of 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(D) on the above referenced dates.

9. Because this affidavit is offered for the limited purpose of supporting the criminal complaint and arrest warrant for Richard A. Dodge II, I have not set forth every fact known to me regarding this incident. Rather, I have included only those facts which I believe establish probable cause.

Affiant Roberto Molina

Subscribed and sworn to before me
this 19 day of August, 2009.

Notary Public
My commission expires: is permanent.